UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIO SIMMONS,<br>    Plaintiff,<br><br>v.<br><br>CORRECTION OFFICER SHECKLER,<br>    Defendant. | CIVIL ACTION NO.<br>3:16-cv-01224 (JCH)<br><br><br><br>JULY 26, 2018 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 42)**

**I.     INTRODUCTION**

Plaintiff Mario Simmons ("Simmons") brings this action pursuant to sections 1983 and 1988 of title 42 of the United States Code against defendant Correction Officer Sheckler ("Sheckler"), alleging violations of his Eighth Amendment rights under the United States Constitution.  See generally Complaint ("Compl.") (Doc. No. 1). According to the Complaint, the violations took place on August 2, 2013, at the State of Connecticut's Robinson Correctional Institution, where Simmons was an inmate and Sheckler worked as a correction officer.  Id. at ¶ 3, 4, 6.  At approximately 11:40 a.m., an inmate assaulted Simmons.  Id. at ¶ 6.  Several correction officers, including Sheckler, responded to the assault, at which time Sheckler allegedly used excessive force against Simmons.  Id. at 7, 8.  Sheckler now moves for summary judgment, solely on the grounds that Simmons failed to exhaust his administrative remedies.  See generally Motion for Summary Judgment ("Def.'s Mot.") (Doc. No. 42).

For the following reasons, the defendant's Motion for Summary Judgment (Doc. No. 42) is granted.

**II.    LEGAL STANDARD**

On a motion for summary judgment, the burden is on the moving party to

1

establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

## III. DISCUSSION

The sole question before the court is whether Simmons properly exhausted his administrative remedies prior to commencing this suit. See Memorandum of Law in

Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 42-1) at 1.

Pursuant to the Prison Litigation Reform Act ("PLRA"), inmates may not bring an action under federal law until they exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, "the PLRA exhaustion requirement requires proper exhaustion," meaning that "prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006); Jones v. Bock, 549 U.S. 199, 218 (2007)).

In Ross v. Blake, the Supreme Court identified a single, "textual exception" to the PLRA exhaustion requirement, namely: while inmates must always exhaust available remedies, they need not exhaust remedies that are "unavailable" to them. 136 S. Ct. 1850, 1858 (2016). The court recognized three circumstances in which "an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 1859. Specifically, exhaustion may be excused when (1) a procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use," because "no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking

3

advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859–60.

"Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." Hubbs v. Suffolk Cty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (internal quotation marks, citations, and alterations omitted). However, once the defendant has established that "an administrative remedy was available in the sense that a grievance policy or procedure existed and covered the dispute at hand," the burden shifts to the plaintiff to prove an exception to exhaustion by showing that a grievance procedure is unavailable. Id. at 61 (internal quotation marks omitted); see also Scott v. Kastner-Smith, 298 F. Supp. 3d 545, 554 (W.D.N.Y. 2018) ("After the defendant satisfies its burden, the plaintiff may attempt to overcome the PLRA's exhaustion requirement by demonstrating . . . [an] exception[ ].") (quoting Powell v. Schriro, No. 14 Civ. 6207 (KPF), 2015 WL 7017516, at *6 (S.D.N.Y. Nov. 12, 2015)) (internal alterations omitted).

In this case, Simmons was required to comply with the grievance procedures set forth in the Connecticut Department of Correction Administrative Directive 9.6 ("Directive 9.6").[1] Shehan v. Erfe, No. 3:15-CV-1315 (MPS), 2017 WL 53691, at *6 (D.

---

[1] The court takes judicial notice of Directive 9.6, as neither party provided the court with copies. See Chambers v. Johnpierre, No. 3:14CV1802(VAB), 2016 WL 5745083, at *3 n.4 (D. Conn. Sept. 30, 2016) (noting that "[t]he court can take judicial notice of the State of Connecticut Administrative Directives on the Department of Correction's website."). In doing so, the court also notes that Directive 9.6 was updated on August 15, 2013, shortly after the inmate assault on August 2, 2013. See Inmate Administrative Remedies, DOC Administrative Directive 9.6 (2013), https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf?la=en. This revised Directive 9.6 superseded an older version issued on November 27, 2012. While there are noticeable differences between the two, these differences do not

4

Conn. Jan. 4, 2017).  Specifically, Simmons's excessive force claims were grievable using the Inmate Grievance Procedure outlined in section 6 of Directive 9.6.  See Directive 9.6, § 4(A) ("The Inmate Grievance Procedure provides an administrative remedy for all matters subject to the Commissioner's authority that are not specifically identified in Sections 4(B) through 4(I) of this Directive.").  Prior to filing an inmate grievance, the Inmate Grievance Procedure requires that the inmate seek informal resolution, first by attempting to resolve the issue verbally and then by submitting a written Inmate Request Form.  Directive 9.6, §6 (A).  If the inmate is not satisfied with the informal resolution offered, the inmate may file a written grievance within thirty calendar days of the occurrence or discovery of the cause of the grievance.  Id. at § 6(C).  If the inmate is not satisfied with the response to his grievance, the inmate may file an appeal.  Id. at § K.

Sheckler argues that Simmons failed to exhaust his administrative remedies because he did not file a grievance within thirty calendar days of August 2, 2013, the date of the incident.  See Def.'s Mem. at 6.  As support, Sheckler provides the Affidavits of prison officials who are responsible for maintaining inmate grievance records at each of the correctional institutions that housed Simmons since August 2, 2013.[2]  See generally Affidavit of Kim Casey-Cortes ("Casey-Cortes Aff.") (Doc. No. 42-2); Affidavit

---

materially affect the case at hand.  Both versions require inmates to file grievances within thirty days of the discovery or occurrence of the cause of their grievance.  See Directive 9.6, § 6(C).  As discussed below, the court concludes that Simmons did not file a timely grievance, meaning that he did not properly exhaust his administrative remedies under either version of Directive 9.6.

[2] At some unspecified time after August 2, 2013, Simmons was transferred to another correctional facility.  See Def.'s Mem. at 1 n.1; Deposition of Mario Simmons ("Simmons's Dep.") (Doc No. 46-2) at 13:3.

5

of Brian Nolan ("Nolan Aff.") (Doc No. 42-2); Affidavit of Louis Kopacz ("Kopacz Aff.") (Doc No. 42-2). These officials attest that they diligently searched the records for grievances and appeals filed by Simmons, but found none relating to his claims against Sheckler. See Casey-Cortes Aff. at ¶ 4; Nolan Aff. at ¶ 4; Kopacz Aff. at ¶¶ 18, 20. Notably, their search did reveal that Simmons attempted to file two grievances regarding other aspects of the inmate assault on August 2, 2013. See Defendant's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1") (Doc. No. 42-2) at ¶ 24; Plaintiff's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2") (Doc. No. 46-1) at ¶ 24. However, as Simmons concedes, neither of these two grievances concerned Simmons's excessive force claims against Sheckler. See Def.'s L.R. 56(a)1 at ¶ 26; Pl.'s L.R. 56(a)2 at ¶ 26. Thus, they cannot provide Simmons with a basis for exhausting his claims against Sheckler, as an "inmate must exhaust his administrative remedies for each claim he asserts in federal court."[3] Shehan, 2017 WL 53691, at *6; see also Jones v. Bock, 549 U.S. 199, 219–20, 223–24 (2007) (directing courts to evaluate PLRA exhaustion using a claim-by-claim approach, and observing that "[a]ll agree that no unexhausted claim may be considered."). Accordingly, the court concludes that Shecker has discharged his initial burden of proving that Simmons failed to exhaust his administrative remedies. See Khudan v. Lee, No. 12-CV-8147 (RJS), 2016 WL 4735364, at *4 (S.D.N.Y. Sept. 8, 2016), appeal dismissed, No. 16-3534, 2016 WL 10100723 (2d Cir. Dec. 8, 2016)

---

[3] Indeed, even if these two grievances did articulate claims against Sheckler, they would not satisfy the PLRA's exhaustion requirement. Simmons does not dispute that these grievances were returned without disposition for failing to attempt informal resolution. See Def.'s L.R. 56(a)1 at ¶ 21; Pl.'s L.R. 56(a)2 at ¶ 21. To exhaust his administrative remedies with respect to these grievances, Simmons needed to refile them, pursuant to section 6(E) of Directive 9.6. Sheckler's Affidavits indicate that Simmons did not refile those grievances, and Simmons has not come forward with evidence to the contrary. See Def.'s L.R. 56(a)1 at ¶¶ 24, 25; Pl.'s L.R. 56(a)2 at ¶¶ 24, 25.

(concluding that defendants "adequately supported the affirmative defense of failure to exhaust" by producing affidavits showing that a search of prison records failed to locate plaintiff's grievance); Bennett v. Onua, No. 09 CIV. 7227 (SAS), 2010 WL 2159199, at *3 (S.D.N.Y. May 26, 2010) (same); Nelson v. Artus, No. 14-CV-6634-FPG, 2016 WL 1023324, at *3 (W.D.N.Y. Mar. 8, 2016) (same).

To rebut this evidence, Simmons only offers testimony from his Deposition, where he claims that he filed both an Inmate Request Form and a grievance detailing the incident with Sheckler. See Simmons's Dep. at 13:20–24, 62:24–25, 63:1. However, Simmons does not provide the court with a copy of either. This omission is striking because Simmons testifies that he gave copies of his grievance paperwork to his attorney. See id. at 63:10–21. In addition, Simmons offers no evidence that his grievance filing was timely. He does not specify the date on which he filed his grievance, and he does not claim to have filed the grievance within thirty days of August 2, 2013, the date on which the grievable incident occurred. He also offers no proof that he complied with Directive 9.6's appeal procedures. In his Deposition, Simmons states that he does not remember whether he received a response to his grievance or whether he ever appealed his grievance. See id. at 13:25, 14:1–3; see also Pl.'s Mem. at 1.

While the court recognizes its duty "not to weigh the credibility of parties at the summary judgment stage," it nonetheless concludes that Simmons's vague, inconsistent, and unsupported testimony fails to raise a genuine issue of material fact with regard to his exhaustion claims. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). Simmons cannot rely exclusively on "conclusory allegations or unsubstantiated speculation" to defeat summary judgment, particularly in light of the

7

defendant's Affidavits showing that Simmons never filed a grievance against Sheckler. id., 426 F.3d at 554; see also Khudan, 2016 WL 4735364, at *5 ("Plaintiff's 'self-serving' and 'incomplete' testimony that he sent an appeal to [the grievance administrator] is insufficient to create a genuine dispute of fact, particularly in light of Defendants' evidence that no grievance was ever sent.") (quoting Lozada v. Delta Airlines, Inc., No. 13 CIV. 7388 JPO, 2014 WL 2738529, at *5 (S.D.N.Y. June 17, 2014)) (emphasis in original); Chambers v. Johnpierre, No. 3:14CV1802(VAB), 2016 WL 5745083, at *7 (D. Conn. Sept. 30, 2016) (concluding that inmate's "unsupported statements that he filed grievances and grievance appeals" failed to create an issue of fact); Dehoyas v. Levac, No. 11-CV-6084 CJS MWP, 2013 WL 2384368, at *3 (W.D.N.Y. May 29, 2013) ("Court finds that Plaintiff's bare assertion at deposition, that he sent copies of his grievance to the facility superintendent and to CORC, . . . is insufficient to create a triable issue of fact as to whether he exhausted his administrative remedies before commencing this action as required by 42 U.S.C. § 1997e."). Moreover, even if the court ignored these fatal evidentiary problems, Simmons's testimony falls short of evidencing that he properly exhausted the grievance procedure under Directive 9.6. As noted above, Simmons offers no testimony, conclusory or otherwise, to suggest that his grievance filing was timely or that he properly complied with Directive 9.6's appeal procedures. See supra at 7. Therefore, even after drawing all inferences in the light most favorable to Simmons, the court concludes that no reasonable jury could find that Simmons completed the grievance procedure under Directive 9.6 and thus exhausted his administrative remedy.

Summary judgment is therefore appropriate unless Simmons can show that

Directive 9.6's administrative remedies were unavailable to him. See Ross, 136 S. Ct. at 1858. Simmons does not attempt to do so, even though he bears the burden of proving an exception to exhaustion. See Hubbs, 788 F.3d at 59. There is also no evidence in the record suggesting that Simmons was prevented at all from complying with Directive 9.6. Indeed, the fact that Simmons filed two grievances relating to other aspects of the inmate assault speaks to the availability of the grievance procedure. See Def.'s L.R. 56(a)1 at ¶ 24; Pl.'s L.R. 56(a)2 at ¶ 24. As such, the court concludes that no reasonable jury could find that Simmons satisfied the PLRA's exhaustion requirement, and therefore grants summary judgment in favor of Sheckler. Cf. Nelson, 2016 WL 1023324, at *3 (granting summary judgment where the "[p]laintiff advanced no justification to excuse his failure to exhaust his administrative remedies").

Thus, the only remaining question is whether the court dismisses Simmons's claims with prejudice. Dismissal without prejudice is appropriate when "a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit." Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2004) (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999)). Conversely, dismissal with prejudice is appropriate "where a plaintiff is effectively barred from administrative exhaustion." McCoy v. Goord, 255 F. Supp.2d 233, 252 (S.D.N.Y. 2003); see also Berry, 366 F.3d at 88; Rivera v. Anna M. Kross Ctr., No. 10 CIV. 8696 RJH, 2012 WL 383941, at *7 (S.D.N.Y. Feb. 7, 2012). Here, it is impossible for Simmons to properly exhaust his administrative remedies, as he was required to file his grievance against Sheckler within thirty calendar days of August 2, 2013. See Directive 9.6, § 6(C). Because Simmons's failure to exhaust is an incurable procedural defect, the court

dismisses his claims against Sheckler with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment (Doc. No. 42) is **GRANTED**; the plaintiff's claims are dismissed with prejudice; and the case is closed.

**SO ORDERED**.

Dated this 26th day of July 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge